James Harris, Appellee, v. Atlantic-Pacific Stages, Inc., Appellant.

Heard in this court at the October term, 1930. Opinion filed January 19, 1931.

LEAHY, SAUNDERS & WALTHER, POPE & DRIEMEYER and LYON ANDERSON, for appellant.

MARTIN M. DRURY and J. D. LERITZ, for appellee.

MR. JUSTICE FULTON delivered the opinion of the court.

This is an action of trespass on the case brought by appellee against the appellant for sickness suffered by appellee by reason of the alleged wrongful ejectment from a restaurant, claimed to have been used by defendant as a waiting room or depot for its passengers.

The appellee filed an ordinary negligence declaration, to which appellant filed a general issue and two special pleas. Verdict of the jury was for the appellee in the sum of $300, which judgment appellant seeks to reverse by this appeal.

On the evening of October 5, 1929, appellee purchased a ticket at Sikeston, Missouri, on defendant's bus line, for East St. Louis, Illinois. The ticket office was located in the City Cafe and notice of its location was evidenced by two boards setting on the sidewalk in front of the restaurant, upon one of which was placed the words, "Atlantic-Pacific Stages, Inc." On the other appeared the names of the stations and the bus

fares. A post in front bore the sign, "City Cafe" and below this another sign, "Atlantic-Pacific Depot." On the window of the cafe was painted "Atlantic-Pacific Depot." On the inside of the restaurant and on the left-hand side was a cage over which appeared the sign, "Ticket Office—Purchase Tickets Here."

In substance appellee testified that about 8 or 9 o'clock on the evening in question he entered the cafe and purchased a ticket on appellant's bus line for East St. Louis, Illinois, being attracted to the bus depot by the signs above described; that he paid $3.75 to the man in the cage whom he identified as Monroe Melton, owner of the cafe; that several chairs were placed in the front of the cafe and used by passengers waiting for the busses; that appellee, after purchasing ticket, sat down on a chair where other passengers were waiting and Monroe Melton approached him and lifted appellee up by the coat and shoulder and said, "We don't allow any niggers to sit in here"; that appellee replied, "What am I to do?" and Melton said, "You will have to roam the streets until the bus runs." That at the time it was drizzling rain and cold outside; Appellee returned to depot about 11:20 p. m. for the purpose of catching the 11:30 bus and was informed that the bus would be delayed and would not arrive until 2:00 or 2:30 a. m.; that plaintiff then asked for a place to wait and that Melton told him to go out into the back yard, and his daughter, Ruby Melton, gave appellee a box on which he sat until 2.30 a. m.; that the weather was damp, misty, rainy and cold; appellee further testified that he requested Melton to take back the ticket and return his money so that he could take a Greyhound Bus, but that Melton refused the request; that the ticket purchased by appellee had printed on it "Atlantic-Pacific Stages, Inc." and that Melton wrote on the ticket at the time of sale, "$3.75" and the destination, "East St. Louis, Illinois"; that the ticket was

accepted by driver of bus and he was carried to St. Louis, Missouri, and there was transferred to another bus which conveyed him to East St. Louis; that appellee got damp and chilled, caught a cold and suffered from la grippe; received medical care, was disabled about eight weeks from his employment where he earned $30 a week.

For the appellant Monroe Melton denied ordering appellee out of the restaurant and testified he had never before seen appellee; that he had a place in his kitchen where colored people could wait for the bus; that he had no agreement with appellant for space in his restaurant and that his arrangement for ticket office was with his daughter, and that he was never employed by the bus company. His daughter, Ruby Lee Melton, testified that her father never sold tickets and could not read or write; that the bus company paid no rent for the space it occupied and that her father gave her the space for the ticket office and permitted the passengers to use the chairs in front while waiting.

It is first contended that the court erred in refusing to direct a verdict in favor of appellant, on motions made at the close of appellant's evidence, and again at the close of all the evidence, because the evidence shows no relationship of master and servant between appellant and Monroe Melton, and no control over his actions; that the acts complained of were not committed by Melton as ticket agent of appellant, or with reference to any of its business, but entirely on his own account.

Appellant's motion raises the legal question as to whether or not there is any evidence at all in the record fairly tending to support the verdict. Tested by this rule, we believe the court did not err in refusing to grant the motions.

The conduct of appellant in permitting signs to be placed on the sidewalk, on the post and on the window

in front of the cafe announcing to the public that this was the "Atlantic-Pacific Stages" depot; the placing of the ticket office inside; the arrangement of the chairs for passengers were all facts for the consideration of the jury in determining whether or not appellant was estopped from denying the appointment and appropriate authority incident thereto. Appellee was rightfully in the room. When he went in to buy a ticket he was in no sense a trespasser. He had a right to enter and to presume that the persons in the open and notorious exercise of the duties incident to the business of appellant had been authorized by the company to do any act properly pertaining to the position occupied by them.

"The public cannot deal with the company in person, but only through its agents, and cannot be required to go and examine the written records of its proceedings to see who have been appointed to particular places, and with what specific powers they have been clothed. It is enough if the company suffers particular persons, openly and notoriously, to occupy particular places of responsibility in its service, without contradiction. Such acquiescence estops the company to deny the appointment, and appropriate authority incident thereto." *St. Louis, Alton & Chicago R. Co. v. Dalby,* 19 Ill. 353; *Chicago & Alton Ry. Co. v. Walker,* 217 Ill. 605.

Adopting this rule of law as applying to the facts in this case, it was not error for the court to refuse instruction number four, or the offer of proof, offered by the appellant in attempting to show the terms of contract existing between appellant and Ruby Lee Melton.

The judgment of the city court of East St. Louis will be affirmed.

*Affirmed.*