Anthony Trust, Sr., Appellee, v. The Chicago Motor Club et al., Appellants.

Gen. No. 8,762.

Opinion filed August 1, 1934.

J. A. MILLER, for appellants.

WILFRED E. HALL, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On May 6, 1932, Anthony Trust, Sr., appellee, while riding as a guest in the automobile of his son, Anthony Trust, Jr., was injured in a collision with a car driven by Frank Waggett. Subsequently this suit was instituted against Frank Waggett, The Chicago Motor Club, The Inter-Insurance Exchange of the Chicago Motor Club, Motor Club Service Corporation, Gerald Lyon and three other individual defendants. Before trial, the suit was dismissed as to the three other indi-

vidual defendants, and proceeded against the defendants named, resulting in a verdict in favor of the plaintiff for $3,500, upon which judgment was rendered and the record has been brought to this court for review by appeal.

The declaration alleges that appellants, at the date of the accident and for some time prior thereto, employed Frank Waggett to solicit automobile club memberships and automobile insurance for them, and that said corporations owned and operated at the time of the accident the automobile then driven by Waggett, who was their agent, servant and employee; that the automobile in which appellee was riding was being driven by his son in a southerly direction just north of the intersection of Jackson street and Jackson court in Waukegan, and that appellee was a guest, and while he was in the exercise of ordinary care for his own safety, the said Waggett operated the car he was driving so carelessly and negligently that a collision occurred, as a result of which appellee was permanently injured.

A plea of the general issue was filed, together with two special pleas in which the appellant corporations alleged that they did not own, operate, possess or control, through their agent, servant or employee, the motor vehicle, mentioned in appellee's declaration, and further alleged that the said Frank Waggett, at the time of. the accident and prior thereto, was not the agent of the appellant corporations or either of them, or subject to their orders, supervision or direction or engaged in the furtherance of any of their business. To these pleas replications were filed in which it was averred that Waggett was permitted to operate the car as the official car of appellants and to hold himself out as their agent, and that therefore the appellant corporations were estopped to deny that Waggett was acting as their servant and agent at the time

of the collision. Upon the general issue and upon these replications issue was joined.

The several corporations are the only appellants who appear in this court. It is not argued that the trial court committed reversible error in the admission or rejection of the testimony, or in the giving or refusal to give the general instructions to the jury, but it is earnestly insisted that the evidence disclosed that Waggett was not employed by them and was not their agent, servant or employee at the time of the collision, but that he was an independent contractor and for this reason a peremptory instruction should have been given at the close of all the evidence or that in any event the judgment should be reversed as the verdict is manifestly against the weight of the evidence upon this issue.

The evidence discloses that J. J. Cavanaugh is general manager of the Chicago Motor Club and of the Inter-Insurance Exchange of the Chicago Motor Club and Assistant Secretary of the Motor Club Service Corporation; that the Motor Club Service Corporation is the attorney in fact for the Inter-Insurance Exchange and sells the policies issued by the Inter-Insurance Exchange; that Waggett is an insurance salesman and has been connected with appellants in this capacity since 1926, at first in Freeport, then Champaign and then at Waukegan. In 1929 Waggett resigned as manager of the Urbana-Champaign branch and was told by Mr. Cavanaugh that if he wished to continue with the organization he should see Mr. Dixon, who was then district or branch manager at Waukegan. From 1924 to October, 1930, Julius Dixon was the Lake county manager, with an office in Waukegan. Waggett saw him and he with four others was employed by Dixon as a salesman to sell memberships in the Chicago Motor Club and insurance in the Inter-Insurance Exchange. Dixon, as manager, was succeeded by Harold Knapp, and he in turn

by the defendant below, Gerald Lyon, who was in charge at the time of the occasion in question. Neither Dixon, Knapp or Lyon received any salary, but worked on a commission basis. Waggett and the other salesmen also worked on commission and their business was to sell memberships in the Chicago Motor Club and insurance in the Inter-Insurance Exchange. When a sale was effected, the applications were turned over to the branch manager at his office in Waukegan, who in turn would send them to the club or exchange in Chicago, and he, the branch manager, would receive a check for his commissions upon the business which was sent in from his office and which was written by the men in his employ, the check being drawn either by the Motor Club Service Corporation or by the Motor Club, depending upon whether it was for insurance or membership, and payable to the district manager. From the money so received by the manager from the Chicago office, he paid the long distance calls, the commissions to the other salesmen, and of the balance he retained 66⅔ per cent and Waggett received 33⅓ per cent. It further appeared that the corporations only engage district managers to whom is paid the commission upon all business arising in their respective districts, and with whom all transactions are carried on. The business is written in the name of the district manager and the names of the individual salesmen working under the manager do not appear upon their books. The supplies, such as receipt books, powers of attorney for applications for insurance and insurance manuals are furnished to the district managers upon their requisition. In the summer or fall of 1929, Waggett was the manager of the Urbana-Champaign office and had "Chicago Motor Club, Official Car Number 49" and the emblem of the Chicago Motor Club painted on the door of the body of his Hudson car. This work was paid for by the Chicago office of the Motor Club.

On the afternoon of May 6, 1932, Waggett had called upon several persons in connection with his work, soliciting memberships and insurance, and had started in this car to the office of the district manager in Waukegan. He noticed the approach of a storm and changed his mind and was on his way home when the collision occurred. At the time of the collision he had with him blank applications for membership, a receipt book and an insurance manual, all furnished by the Motor Club and which he used in connection with his work. Waggett was authorized to make collections and to issue receipts therefor signed "Chicago Motor Club by Frank Waggett" and just after the accident he gave the son of appellee a card, upon which appears the name "Chicago Motor Club, Waukegan Branch, 111 South Genesee St., Waukegan, Illinois. Frank Waggett, Assistant Manager."

The general rule is that a party injured by the negligence of another must seek his remedy against the person who caused the injury, since such person is alone liable. To this general rule the case of master and servant is an exception, and the negligence of the servant in the course of his employment and acting within the scope of his authority is, in contemplation of law, the act of the master, but to bring a case within this exception it is necessary to show that the relation of master and servant and not that of employer and independent contractor exists between the person at fault and the one sought to be charged for the result of the wrong, and the relation must exist at the time and in respect to the particular transaction out of which the injury arose. Outside of the scope of his employment the servant is as much a stranger to his master as any third person, and an act of the servant not done in the execution of services for which he was engaged cannot be regarded as the act of the master. If the servant steps aside from his master's business for some purpose wholly disconnected with his em-

ployment, the relation of master and servant is suspended. The act of the servant during such interval is not to be charged to his master. *Johanson v. Johnston Printing Co.*, 263 Ill. 236; *Harding v. St. Louis Nat. Stock Yards*, 242 Ill. 444.

In *American Sav. Life Ins. Co. v. Riplinger*, 249 Ky. 8, 60 S. W. (2d) 115, it was held that the life insurance company was not liable for an injury to a pedestrian caused by the negligence of one of their soliciting agents employed on a commission basis, while he was driving his wife's automobile in connection with his work. The court in that case said: ''A master within the doctrine of respondeat superior is the one who cannot only order the work, but also how it should be done. The doctrine applies only where the relationship of master and servant exists at the time and in respect to the thing causing the injury and from which it arose and then only when the one sought to be charged has some right in some way to control the conduct of the party having caused the injury.''

In *Williams v. National Cash Register Co.*, 157 Ky. 836, 164 S. W. 112, the court, after discussing a contract of employment between an employee and the company, held that the employee was not an independent contractor, but a servant, and in the course of its opinion said: ''The test of the relationship is the right to control. It is not the fact of actual interference with the control but the right to interfere that makes the difference between an independent contractor and a servant or agent. To enlarge the test is whether the employee represents his employer as to the result of the work only, or as to the means as well as the result. If the employee is merely subject to the control or direction of the owner or his agent as to the result to be obtained, he is an independent contractor. If the employee is subject to the control of. the employer as to the means, he is not an independent contractor.''

In *Burster v. National Refining Co.,* 274 Ill. App. 104, it appeared that Mr. Shockey was a salesman for the refining company. He worked for the company in an assigned territory calling upon customers and prospective ones, taking orders, distributing literature and signs and endeavoring to promote the sale of the products of the refining company. In traveling from town to town in the course of his work he used his own automobile and received from the company a salary of $200 per month and in addition $2 per day in consideration of the use of his car. He carried with him in his car a portfolio and advertising literature of the company and on the cover of his spare tire were words advertising the company's products. In returning to his home from a sales meeting which he had been attending at Peoria at the request of his immediate superior, his car collided with another, resulting in the death of an occupant of the other car. In sustaining the action of the trial court directing a verdict for the refining company, this court said: ''We have examined the cases cited by the appellant as tending to show that Shockey was a servant of the National Refining Company at the time of the collision of the automobiles which caused the death of the plaintiff's intestate. In all or nearly all of the cases cited, the company had retained the authority to direct the means and the manner in which their salesmen should conduct the business. The evidence in this case shows that at the time of the collision, Shockey was driving his own automobile and not at the direction or under the control of the National Refining Company; that to some extent in the performance of his duties he was under the direction and control of the Refining Company, but so far as his actual movements were concerned he was free to go at any time or place in certain designated territory to transact his business; that Shockey in going to and from the salesmen's meetings

at Peoria used his own discretion in how he should travel, and that at the time of the collision he was not acting as a servant of the National Refining Company.''

Appellee, however, cites and relies upon the case of *Shannon v. Nightingale,* 321 Ill. 168. The plaintiff in that case was injured by a truck belonging to Rose Loux, which was driven by Dale Pratt. At the time the injuries were sustained, Pratt was engaged in hauling gasoline and oil which belonged to Wm. R. Nightingale and John P. Pallissard, partners, doing business as the Eastern Illinois Oil Company. In affirming the judgment which the plaintiff recovered in the circuit court against Nightingale and Pallissard and which had been affirmed by this court, the Supreme Court said: ''This record presents no question of law for our consideration except that raised by the motion to direct the verdict. The question arising on this motion is whether there is any evidence tending to sustain the plaintiff's side of the issue. The plea that Dale Pratt was not the servant of the defendants raised an issue of fact. . . . If the contract of the plaintiffs in error with Mrs. Loux had been in writing, the question whether, in performing the work of delivering gasoline and oil for the plaintiffs in error, she was an independent contractor would be determined, as a matter of law, by a construction of the written contract. (*Pioneer Construction Co. v. Hansen,* 176 Ill. 100.) Since the contract was not in writing but could be shown only by parol evidence, the determination of its terms was necessarily left to the jury, and the question whether by its terms Mrs. Loux was an independent contractor or not was therefore required to be submitted to the jury under proper instructions by the court. (*Consolidated Fireworks Co. v. Koehl,* 190 Ill. 145.) The facts that the trucks all had the plaintiffs in error's firm name painted on

them, that the drivers collected pay for the plaintiffs in error for the gasoline and oil which they delivered, that they took orders for gasoline and oil to be delivered by plaintiffs in error, that they were *under the control and direction* of the plaintiffs in error as to when and where they should deliver gasoline and oil, all were circumstances tending to show that the drivers of the trucks were the employees of the plaintiffs in error. There were other circumstances tending to show that they were the employees of Mrs. Loux as an independent contractor. The determination of the question of ultimate fact whether or not Pratt was an employee of the plaintiffs in error involves a conclusion derived from a consideration of all these and other evidentiary facts, in connection with the application of principles of law to a consideration of the evidence. The question thus becomes a mixed question of law and fact, as to which the verdict of the jury and the decision of the Appellate Court are conclusive and not subject to review. (Citing cases.)'' The court then reaffirmed what was said in the case of *Densby v. Bartlett,* 318 Ill. 616, in which it was stated that the most universal and unfailing test for determining the relation of master and servant is the power of the person for whom the work is done to discharge the servant; that where there is such power, the relation of master and servant exists, that where the person for whom the work is done has not such power, the relation of master and servant does not exist. The opinion then continues: ''The application of those principles to the evidence was necessary to the determination of the question whether or not Pratt was the servant of plaintiffs in error, and the determination of that question by the jury, approved by the judgment of the circuit court, which has been affirmed by the Appellate Court, in the absence of error of law, precludes any review of the question by this court.''

In the *Shannon* case it appeared that Pratt, the driver of the truck, was directly under the control of the Eastern Oil Company to do such acts as he was ordered and directed by the members of the firm which constituted the oil company to whom their services were loaned by Mrs. Loux, and in this connection the court said, ''Was the servant whose negligence injured the third party performing work for his master within the scope of his employment or was he loaned by his master to do another's business? In the former case the general employer is liable for his negligence: in the latter he is not.''

In the instant case Waggett was subject to the orders of no one. He solicited when and whom he pleased, confining his efforts to the territorial limits of Lake county. He adopted his own means and methods of calling upon prospective customers. He used his own car or any other means of transportation he wished. No proportion of the expense incurred by him in the operation and maintenance of his car was paid either by the district manager or by appellants. He procured his own automobile license, paid for it and maintained his car at his own expense. He received in return for his efforts a commission upon the business procured. He made reports to the manager of the Waukegan office who alone had the power and authority to discharge him. Appellants did not employ him, had no right to discharge him, nor could they direct or control his work.

Appellee insists, however, that Waggett was in fact the subagent of appellants, having been appointed with their authority by their branch manager and appellants were therefore liable for the tort of Waggett in like manner as for the torts of an agent appointed directly by them. This is no doubt true if the legal relation of master and servant existed between appellants and Waggett, as distinguished from the legal

relationship of principal and (so called for want of a better name) independent contractor. Of course a master is liable for the acts of one whom his servant employs to assist in the performance of the master's work under the authority given the servant by the master, subject to the limitation that the acts complained of must be within the scope of the servant's employment. 39 C. J. 1271. In the instant case, however, the weight of the evidence is that Waggett, under the terms of his contract of employment, was an independent contractor.

Appellee further insists that from the lettering and insignia appearing on the door of Waggett's sedan, the presumption obtains that the car he was driving belonged to the Motor Club and therefore appellants are estopped from denying the ownership of the car or that Waggett was their agent and acting within the scope of his employment. In support of this contention, the cases of *Aetna Ins. Co. v. Maguire,* 51 Ill. 342, and *Harris v. Atlantic-Pacific Stages, Inc.,* 260 Ill. App. 308, are cited and relied upon. The *Aetna Ins. Co.* case, *supra,* was an action in assumpsit brought to recover on a fire insurance policy and the contention was made by the company that Sweet, its agent, who wrote the policy, was acting without authority, and the company was therefore not bound by his acts and declarations. In disposing of that contention, the court stated that where an insurance company appointed an agent for a particular locality and such agent issued a policy of insurance upon property outside of such territory and afterward the policy was submitted to the general agent of the company and no objection was made that the local agent had exceeded his authority, and the taking of the risk was acquiesced in, the company is estopped from thereafter insisting that the local agent did not have authority to issue the policy. The *Harris* case, *supra,* was an action to re-

cover damages alleged to have been sustained by Harris in being ejected from a restaurant used by defendant as a waiting room for its passengers. It was contended by defendant that Monroe Melton, whom it was claimed ordered Harris from the restaurant, was not an employee of the defendant, and that the relation of master and servant did not exist between them. The court held, however, that the conduct of the defendant in permitting signs to be placed on the sidewalk in front of his restaurant, on the post and windows, announcing to the public that his restaurant was the "Atlantic-Pacific Stages" depot, the placing of a ticket office inside, and the arrangement of the chairs for passengers were facts for the consideration of the jury in determining whether the defendant was estopped from denying the appointment and authority of Melton. The principles enunciated by these cases are well known and there is nothing said in either case in conflict with our holding here.

In the instant case it was entirely proper for appellee to show that the car of Waggett bore the insignia and lettering which indicated that it belonged to the Chicago Motor Club. This fact, together with the further facts that Waggett had with him in his car an insurance manual, receipt book, applications for insurance in the Inter-Insurance Exchange and applications for membership in the Chicago Motor Club all furnished by appellants, and also the business card referred to, were all proper for the consideration of the jury as tending to show that Waggett was an employee of appellants. It was also proper for appellants to show that the car was not theirs, but Waggett's, and all the other facts and circumstances in connection with his duties and character of his employment. An issue made by the pleadings was whether or not Waggett was the servant of appellants or whether he was an independent contractor, but the verdict of the jury,

finding these issues for appellee, cannot be sustained simply because appellee made out a prima facie case. The presumption arising from the proof offered by appellee is not a conclusive one, but is disputable. In *Osborne v. Osborne,* 325 Ill. 229, the court, citing 1 Jones' Com. on Evidence, 75, said: "As soon as evidence is produced which is contrary to the presumption which arose before the contrary proof was offered, the presumption vanishes entirely." Here the uncontradicted evidence is that Waggett, the driver of the car, and not the party whose insignia and name appeared thereon, was the owner and under the authorities appellants were not estopped from insisting that the true relationship was that of principal and independent contractor. *Foster v. Wadsworth-Howland Co.,* 168 Ill. 514, where it was held that one who contracts with a business house to do all its hauling and delivery work at a specified sum per week, furnishing teams, wagons and drivers, over which he retains full control, is a contractor and not a servant and the business house is not liable for the negligent driving of the wagons, though its name and address are painted thereon.

Appellee also cites the case of *Hartley v. Red Ball Transit Co.,* 344 Ill. 534. In that case the employer undertook to control the details of operating the truck which caused the injury and the court, following its decision in *Shannon v. Nightingale, supra,* applied the rule that the element of control determines whether an agent is a servant or an independent contractor.

From our examination of the authorities not only in our own State but in other jurisdictions, we are clearly of the opinion that the facts as they appear in this record establish that the relationship which existed between appellants and Waggett was that of principal and independent contractor. *Meece v. Holland Furnace Co.,* 269 Ill. App. 164; *Burster v. National Refining Co., supra; Pyyny v. Loose-Wiles Biscuit Co.,*

253 Mass. 574, 149 N. E. 541; *Nettleship v. Shipman,* 161 Wash. 292, 296 Pac. 1056; *McCarthy v. Souther,* 83 N. H. 29, 137 Atl. 445; *Stockwell v. Morris,* — Wyo. —, 22 P. (2d) 189; *Aldrich v. Tyler Grocery Co.,* 206 Ala. 138, 89 So. 289; *Dohner v. Winfield Wholesale Grocery Co.,* 116 Kan. 237, 226 Pac. 767; *Howitt v. Hopkins,* 219 App. Div. 653, 220 N. Y. S. 462; *Gall v. Detroit Journal Co.,* 191 Mich. 405, 158 N. W. 36.

The judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*