**A. R. KOEHLER, Plaintiff-Appellant,**

v.

**Lawrence ELLISON, Defendant-Appellee.**

**No. 11455.**

United States Court of Appeals
Seventh Circuit.

Nov. 2, 1955.

Homer A. Cope, Walter A. Raymond, Kansas City, Mo., Frederick C. Jonas, Eugene T. Devitt, Chicago, Ill., for plaintiff-appellant.

Vincent O'Brien, Thomas J. Johnson, Jr., James G. Duggan, Chicago, Ill., for defendant-appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff, a distributor of vending machines manufactured by defendant, doing business as Lawrence Manufacturing Company, brought suit in the district court to recover damages for alleged misrepresentations, which plaintiff averred in his complaint had been made by one Duncan as an authorized agent of defendant. The cause having come on for trial, the court directed that before evidence would be heard upon the merits of plaintiff's claim, he would be required to prove that Duncan was in fact an authorized agent whose alleged fraud bound defendant. Upon this issue, the court, having before it the testimony of plaintiff, that of defendant, certain exhibits and the deposition of Duncan, found that plaintiff had failed to prove that Duncan was an agent of defendant; that, on the contrary, the evidence affirmatively showed that he was an independent contractor of and distributor for one McWhorter, doing business under the trade name of Interstate Distributors, who, in turn, was a wholesale distributor of products manufactured by defendant, as an independent contractor; that plaintiff had also failed to prove that McWhorter was an employee or agent of defendant, and, finally, that Duncan was an independent distributor and not an employee or agent of defendant.

The court made findings also of certain evidentiary facts, essentially as follows. Duncan sold plaintiff certain vending machines manufactured by defendant. In connection with these machines and others, which he sold to various other persons, Duncan received no salary, traveling or advertising expenses, or remuneration from defendant except a discount on the machines sold to him. Defendant had no right to control, or supervise Duncan as to when or how long the latter worked, where he worked, the prospective customers he called on, the methods he used in making sales, or the means by and the manner in which he should perform his work. Defendant was interested only in the results accomplish-

ed by Duncan. Having made these findings, the court entered judgment dismissing plaintiff's claim.

█ Obviously, in a trial without a jury we cannot ignore the court's findings unless they are clearly erroneous. Federal Rules of Civil Procedure, rule 52 (a), 28 U.S.C.A.; Gary Theatre Co. v. Columbia Pictures Corp., 7 Cir., 120 F.2d 891. Consequently, the question submitted to us is whether the evidence was such that for the court to find as it did was clearly erroneous.

Stated somewhat sketchily, the evidentiary facts follow. Plaintiff, on or about February 15, 1950, after reading an advertisement for distributors for candy bar vending machines, came in contact with Duncan. Duncan testified that the advertisement was his; that several weeks prior thereto he himself had answered a similar one and had been interviewed by one McWhorter, who was in possession of a sample machine; that McWhorter said that he could make an arrangement whereby Duncan would receive 30% of the sales price of each machine purchased through him with an additional 5% if he sold a certain number each month. McWhorter explained the sales program, and plaintiff eventually gave McWhorter a check for $60.00, payable to defendant, for a sample machine and sales kit, which he received in due course. Thereupon, he began advertising in the Kansas City area. Duncan told plaintiff that he, Duncan, was connected with Interstate Distributors, in Nebraska.

The sales kit contained advertising matter, reports of sales in different areas and a letter from Lawrence Manufacturing Company, authorizing the distributor to endorse checks payable to the company in payment for machines and to secure, in lieu thereof, drafts payable to the latter.

Plaintiff gave Duncan an order for 20 machines and paid for them on February 21, 1950 by check for $2000.00 payable to defendant. In March, plaintiff issued two additional checks to cover the cost of 20 other machines. Each of the plaintiff's checks was endorsed by Duncan in the company's name and surrendered to a bank in return for drafts payable to the company, without deducting his discount of 30%. And, when the drafts were delivered to the company, it promptly paid Duncan's commissions.

Duncan testified further that he explained the terms of the purchase order to plaintiff at the time of the latter's first purchase; that plaintiff read it; that he himself hired a man to pick locations for placement of the machines sold plaintiff, and that plaintiff inspected all locations and signed an acknowledgment that the sites were satisfactory.

Defendant, called as a witness by plaintiff, testified that he manufactures vending machines under the name of Lawrence Manufacturing Company; that he knew McWhorter but had never met Duncan; that McWhorter did not consult him with regard to Duncan's undertaking, but that he approved the latter's credentials submitted with his contract with Interstate. He said that he did not employ Duncan and had no contract with him; that Duncan was not on any of his payroll, expense or drawing accounts, but received a discount on machines sold; that defendant could not cancel Interstate's contract with Duncan, but that, if defendant concluded that Duncan was an unacceptable distributor, he, the defendant, could get rid of him through McWhorter.

Defendant testified further that Duncan's authority to endorse checks payable to the company was extended to him in order to satisfy purchasers that their money was going to the company instead of the salesman. When Duncan remitted the full amount due for machines purchased, defendant immediately sent the earned discount to him. When he received the first order from plaintiff, he advised the latter how to prepare his purchase orders correctly. Duncan sent his orders directly to defendant but McWhorter received copies. At the end of each month, McWhorter received from

defendant his wholesale discounts on sales made by his various distributors.

No withholding or social security taxes were deducted by defendant or McWhorter for Duncan. Duncan paid his own expenses and worked when and where he wanted to. The salesmen, such as Duncan, were not defendant's employees, and he had no right to fire or hire them or to tell them what to do.

In addition to the oral testimony, plaintiff submitted certain exhibits, including a contract dated January 29, 1950, between Interstate and Duncan, as its distributor, containing a provision that it included all agreements between them for purchasing and selling defendant's machines, to become effective when approved by defendant. Under this document, Interstate agreed to sell machines to Duncan at a $30 discount. Duncan agreed to purchase sample equipment, pay his own expenses and devote part or full time to selling machines. He stipulated that he had no authority to bind Interstate and that he was to have no drawing account and was to be responsible for the locations for machines sold by him. He agreed that misrepresentation on his part or failure to conduct his business in an ethical manner would automatically cancel his distributor's contract.

Defendant wrote plaintiff welcoming him to the organization, through Interstate, and advising him that all orders would be processed from defendant's Chicago office. Another letter congratulated plaintiff on his first order of 20 machines and suggested certain corrections in the manner in which order blanks were to be filled out. Another letter informed plaintiff he would receive a commission of $5.00 for each machine sold through any distributor that he might "take on" and that he could operate any place in the United States. Certain other letters were received in evidence but they add little, if anything, we think, to plaintiff's claim of agency.

■■ We may not usurp the function of the trier of the facts; we may inquire only whether the evidence adequately justifies the findings. With this precept in mind, we find possible only one conclusion on our part, and that is that the findings are not clearly erroneous.

It seems clear that the tests supplied by the Restatement of the Law of Agency to show control of one by another were not met. See Restatement, § 220 (2) (a) through (i). Thus, there is no evidence that defendant had a right to exercise, or that he attempted to exercise, any control over Duncan's work. The latter found his own prospects, worked when and as he pleased, employed methods of his own without instructions or orders from defendant. He was under no supervision by defendant, and employed his own selling and organizational skill in obtaining prospects, selling machines, locating same, and in hiring other distributors. He purchased his sales kit from defendant and worked wherever he chose. His contract was for an indefinite period. He was compensated only by discounts. No income or social security taxes were withheld for him. His contract expressly provided that he should be an independent contractor. Such evidence does not bring Duncan within the test prescribed by the Restatement.

We think also that the law of Illinois, where defendant was located, that of Kansas, where plaintiff lived, that of California where defendant resided and that of Missouri where machines were sold are all to the same effect. Thus it was said, in Postal Telegraph Sales Corporation v. Industrial Commission, 377 Ill. 523, 528–529, 37 N.E.2d 175, 178: " * * * an independent contractor may do the work in the manner he sees fit; may employ his own assistants; may work when he pleases and be paid either a lump sum or by piece work, or by the day or week, if it is only a result he is accomplishing, which must meet with the approval of the other party." See also Trust v. Chicago Motor Club, 276 Ill.App. 289; Burster v. National Refining Co., 274 Ill.App. 104; Meece v.

Holland Furnace Co., 269 Ill.App. 164. The Supreme Court of Kansas said in Hurla v. Capper Publications, 149 Kan. 369, 87 P.2d 552, 557: "It is necessary to show by competent testimony that the defendants * * * controlled or had a right to control the physical conduct of Lane in the performance of the service required by the employment." See also Dohner v. Winfield Wholesale Grocery Co., 116 Kan. 237, 226 P. 767; Houdek v. Gloyd, 152 Kan. 789, 107 P.2d 751. In California the same rule prevails. Lee v. Nanny, 38 Cal.App.2d 90, 100 P.2d 832; Rathbun v. Payne, 21 Cal. App.2d 49, 68 P.2d 291. As to Missouri law, see Vert v. Metropolitan Life Ins. Co., 342 Mo. 629, 117 S.W.2d 252, 116 A.L.R. 1381; Glynn v. M. F. A. Mut. Ins. Co., 363 Mo. 896, 254 S.W.2d 623, 36 A.L.R.2d 256; and Barnes v. Real Silk Hosiery Mills, 341 Mo. 563, 108 S.W.2d 58.

It should be observed further that in each of the purchase orders the plaintiff specifically stated over his signature that he agreed to its conditions, one of which was as follows: "The Lawrence Manufacturing Company assumes no responsibility for securing locations, assignment of territories or any other agreement, oral or written, made by Interstate Distributors or its dealers." The Restatement of the Law of Agency, § 260(1) frames the rule in such situations as follows: "A principal, may, by contract with another, relieve himself of liability in deceit for prior or subsequent frauds of an agent to such other." The various jurisdictions involved seem, without exception, to approve the rule thus defined. Thus, in Speck v. Wylie, 1 Cal.2d 625, 36 P.2d 618, 619, 95 A.L.R. 760, the court said: "Without attempting further elaboration we therefore announce that we are in accord with the above statements of the rule which will, all other things being favorable to the complaining party, allow him to rescind and to pursue the principal far enough to secure a return of the consideration paid. But an action for fraud and deceit will not be allowed him under such conditions." In the later case of Harnischfeger Sales Corporation v. Coats, 4 Cal.2d 319, 48 P.2d 662, 663, the California court said: "This problem was the subject of conflicting decisions in California until recently, when this court, in Speck v. Wylie, 1 Cal.2d 625, 36 P.2d 618, 95 A.L.R. 760, announced the governing rule. It was there held that an innocent principal might by such a stipulation *protect himself* from liability in a tort action for damages for fraud and deceit, but that the third party would nevertheless be entitled to *rescind the contract*. This is the rule declared in the Restatement of the Law of Agency, §§ 259 and 260." (Emphasis by the Court.) See also J. B. Colt Co. v. Kocher, 123 Kan. 286, 255 P. 48.

Plaintiff has suggested that in reaching its conclusion the district court was forced to rely upon the written deposition of Duncan and the documents in evidence; that upon evidence of this character, no question of credibility arose and that this court, therefore, is as free to pass upon the weight of the evidence as was the trial court. Though we recognized in Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, at page 802, that where all the evidence is by way of exhibits or depositions, we may interpret it as well as might the district court and thus review the findings, the present case is not within the exception recognized. Here not only were the exhibits and deposition before the court, but there was also the oral testimony of defendant. As to him, clearly, the trial court's determination of the weight to be given his testimony must prevail, unless we can say that the finding is clearly erroneous. After a careful examination of the record, we are of the opinion that we are not justified in substituting our judgment for that of the district court in that respect.

The judgment is

Affirmed.