Scott **CUTHILL**, Plaintiff-Appellee,

v.

**ORTMAN–MILLER MACHINE COM-PANY**, Defendant-Appellee,

and

J. Carter Miller, Intervenor-Appellant

No. 11985.

United States Court of Appeals Seventh Circuit.

Oct. 16, 1957.

Rehearing Denied Nov. 18, 1957.

Benjamin Wham, Chicago, Ill., Owen W. Crumpacker, Theodore M. Gemberling, Hammond, Ind., for intervenor-appellant.

Lee M. Burkey, Jr., Chicago, Ill., Asher, Gubbins & Segall, Chicago, Ill., of counsel, for plaintiff-appellee.

James V. Donadio, Willis H. Ellis, Indianapolis, Ind., James J. Richards, Hammond, Ind., Ross McCord Ice & Miller, Indianapolis, Ind., of counsel, for defendant-appellee.

Before FINNEGAN and SCHNACKENBERG, Circuit Judges, and PLATT, District Judge.

PLATT, District Judge.

Appellee, Scott Cuthill, on December 21, 1953 obtained a judgment against the appellee, Ortman-Miller Machine Company, a corporation, for $4,100.00 for overtime compensation in a suit based upon the Fair Labor Standards Act. 29 U.S.C.A. § 201 et seq. On the next day the appellant, J. Carter Miller, a minority stockholder in Ortman-Miller filed a petition to intervene, vacate the judgment and defend upon behalf of Ortman-Miller alleging that the judgment was a fraud upon the court in that Cuthill did not have a valid claim for overtime, and that Ortman-Miller's counsel was aware of this. The district court allowed a motion to dismiss the intervening petition. Miller appealed and the order of dismissal was reversed and remanded in Cuthill v. Ortman-Miller Machine Company, 7 Cir., 1954, 216 F.2d 336. Since the allegations of the petition to intervene are set forth in that opinion it is not necessary to repeat them here.

Evidence was heard by the trial court upon the allegations in the intervening petition, and the court made findings of fact, conclusions of law and ordered the prayer of the petition denied. Miller has again appealed and maintains:

1. That the prior decision of this court entitled him to defend for the Company and have the judgment vacated as a matter of right.

2. That in the event the district court had discretion to determine whether the judgment should be vacated, the district court abused such discretion because the evidence offered substantiated the allegations of the petition.

The opinion of this court on the prior appeal explicitly held that Miller was entitled to a hearing on his petition to intervene, but it did not thereby order the judgment vacated and a defense to be made. Judge Lindley, speaking for this court, said, 216 F.2d at page 339:

"Inasmuch as Rule 60(b) endows the court with power to vacate any fraudulent judgment, plaintiff was entitled to be heard upon his averments. Obviously the District Court has inherent power to investigate such averments of fraud."

In the concluding paragraph of the opinion it was stated:

"We know not what proof appellant may be able to produce, but we are of the opinion that he should be permitted to intervene and have his day in court. The order is reversed with directions to proceed accordingly."

Counsel for Miller, in spite of their contention, must have understood that they were required to prove the allegations of their petition, since the following statement was made to the trial court:

"The Circuit Court of Appeals in determining the law of this case, on the very facts that are the subject of inquiry here, has held that if the matters in the intervening petition are true, and if the intervenor can prove those things, a fraud has been perpetrated on the United States District Court of Indiana of a rather vicious nature."

This brings forward the real issue. Appellant contends that the trial court abused its discretion in denying him relief, because the evidence substantiated the allegations of fraud. The obvious question on appeal is whether there was substantial evidence presented on the hearing of the petition to intervene upon which the trial court's findings of fact can be sustained. Findings of fact by the district court will not be set aside on appeal unless clearly erroneous. Fed. Rules Civ.Proc. rule 52(a), 28 U.S.C.A. Koehler v. Ellison, 7 Cir., 1955, 226 F. 2d 682.

The undisputed evidence discloses that Miller, at the time the judgment in question was entered, owned 20% of the stock of Ortman-Miller Machine Company. The remaining stock was owned by Carl Speichert, Alva Ortman, Nelson Ortman, and Harold Ortman. The Company was originally organized in 1945 and manufactured machine tools. About 1948 Ortman-Miller started manufacturing hydraulic cylinders and its business became very prosperous through the efforts of the sales agency operated by Miller, under the name of Midwest Supply Company. He and his sales organization sold a large amount of products of Ortman-Miller. Miller was president of Ortman-Miller and on November 1, 1950 employed the appellee, Cuthill, as a bookkeeper for Ortman-Miller and Midwest. In March, 1952, Miller was removed as president of Ortman-Miller by the other directors who were stockholders, and Ortman-Miller started selling its products direct to its customers and bypassed Midwest. Miller filed suit in Lake Circuit Court of Indiana in March, 1952 against the other stockholders and Straley Thorpe who was employed as counsel for Ortman-Miller. This suit was based on malicious destruction and appropriation of Miller's Midwest Supply Company. The case was venued to Jasper Circuit Court for trial and judgment was entered against Miller. The Appellate Court of Indiana affirmed the trial court in Miller v. Ortman, Ind.App., February, 1955, 124 N.E.2d 390, rehearing denied 125 N.E.2d 257. The Supreme Court of Indiana reversed the Appellate Court and remanded the case for trial. July, 1956, 235 Ind. 641, 136 N.E.2d 17.

Miller's counsel devoted a great deal of their printed argument to the reversal of this case by the Supreme Court of Indiana, and the acts and doings of the other stockholders and Thorpe in usurping the business of Midwest. The Indiana case is not vital to the question here involved as to whether Cuthill had a valid claim for overtime. Appellant's contention that the district court relied upon the Indiana Appellate Court's decision as decisive in this case is rejected by the statement of the trial court in its opinion as follows:

"Those findings, however, do not allude to any of the activities of Cuthill in relation to the ousting of Miller and the acquisition of Midwest's business by Ortman-Miller. These matters were raised for the first time during this hearing."

Cuthill's employment by Ortman-Miller ended in February, 1953. He claimed that he had worked many hours of overtime from February, 1951 through January, 1952. Harney, the external auditor for Ortman-Miller, was changing the accounting system of the company by recasting the books to reflect the business from an accrual basis instead of a cash basis, and doing other accounting work for Ortman-Miller. Commencing in February, 1951 this work was required in connection with Ortman-Miller's income tax returns. Miller himself testified that he requested Cuthill to assist Harney in this work. Harney and Cuthill both testified that Cuthill worked in Harney's office in connection with work for Ortman-Miller on evenings and week ends, averaging at least 30 hours per week. Miller in his testimony stated further that Cuthill worked on the premises of Ortman-Miller and Midwest 40 hours per week during this period. Another employee of Ortman-Miller had obtained additional pay for overtime. Cuthill contacted an official of the Wage and Hour Board in Gary, Indiana, in January, 1953. He also spoke to Thorpe and Harney and requested pay for his overtime. In March, 1953 after his connection with Ortman-Miller was severed he consulted Mr. Lee Burkey, a practicing attorney in Chicago, who had formerly been employed as an attorney by the United States Department of Labor in the Wage and Hour Division. Burkey requested Cuthill to furnish a record of his overtime and Cuthill brought a tabulation from his original notes which were later lost. When the hours were added by Burkey the memorandum disclosed a total of 1211. Later Burkey advised Cuthill that the two year statute of limitation (as provided by 29 U.S.C.A. § 255) was running on his hours of overtime, and received authorization to sue. This suit was filed June 2, 1953 alleging a claim for overtime for each workweek between June 3, 1951 and January 11, 1952, and asked judgment for overtime, liquidated damages, attorney's fees and costs. Answer was filed by Ortman-Miller denying liability.

Mr. Joseph P. Sullivan, an attorney from Whiting, Indiana, was employed by Burkey as local counsel when the suit was filed. Mr. James J. Richards entered the case with Thorpe as attorney for Ortman-Miller. In October, Richards contacted Burkey in Chicago to determine the amount claimed. In November, 1953 Burkey wrote a letter to Richards in which he offered to accept in settlement $5,295.72, which consisted of $3,953.75, for all overtime, including the hours barred by the statute of limitations, $1,372.92 for attorney's fees, $24.05 costs, and omitting any damages. Cuthill's hourly pay for the first part of his employment, based upon a 40 hour week, was $1.875 per hour and later $2.1875 per hour. During the period claimed in the suit his hourly pay was $2.1875 or $3.28 for overtime. In all, Cuthill claimed 893½ hours of overtime which were not barred by the statute of limitations and this amounted to $2,930.68 without damages. Negotiations continued and about a week before December 21, 1953 Sullivan and Burkey met with Thorpe and Richards in Hammond, Indiana, and the controversy was finally settled and compromised for the sum of $4,100.00. Burkey, Sullivan and Thorpe testified to

all of the discussions which occurred at the settlement meeting. The district court on its own initiative, without objection, called Sullivan as a witness and admonished the parties not to speak to Sullivan until he appeared in court. In the examination by the trial court Sullivan described a heated discussion between counsel prior to reaching a settlement. Appellant maintains that the settlement was a sham transaction. However, he admits that Sullivan was not connected with the fraud in any way. He cross-examined Sullivan and there is nothing in his evidence that in the slightest way would indicate that there was any artifice or connivance practiced by anyone in reaching the settlement. This court can find no evidence that would indicate in the slightest degree that the settlement was not legitimate.

On December 21, 1953, Cuthill with his attorneys, Burkey and Sullivan, and Ortman-Miller with its attorneys, Thorpe and Richards, appeared in the United States District Court. Before Cuthill testified Thorpe made the following statement:

"I would like to say this, your Honor: This Company has been confronted with numerous lawsuits, with some pretty bad charges, and I am confronted with a situation where I just can't stipulate the facts. I can go along with this; I want this man to be paid; and I can determine pretty well what the amount is. I should like, if it is not asking too much, that the record should show that there was evidence heard and that the Court made a finding on this; if it is not asking too much, I should like that, because I might be confronted somewhere with the statement that I had agreed to this judgment. I would rather, if we could, do it that way, if it is not an imposition upon your Honor."

The court after hearing the evidence entered a judgment for $4,100.00. On the next day Miller filed this intervening petition. Appellant attributes to Thorpe's statement a fraudulent intent to pay Cuthill. While Thorpe's statement was inept there is nothing in it to indicate that he was acting fraudulently when it is considered in the light of the settlement negotiations and the other evidence above related.

The district court correctly decided the true issue in this case. The court's opinion stated:

"Having in mind the facts and charges surrounding the dispute between Miller and the other parties connected with Ortman-Miller at the time Cuthill filed his complaint in this court, a determination of the major issue raised by the intervenor's petition will be made: were there any fraudulent misrepresentations made to this court? It is evident that the intervenor's right to have the judgment set aside under Rule 60(b) must lie in the determination of whether he has shown any such misrepresentation."

"As discussed previously, one of these alleged misrepresentations was that Cuthill had a valid claim for overtime compensation. The facts relating to the type of work performed by Cuthill and as to how the claim for overtime hours was made, have already been related. These facts were testified to by Cuthill, Harney, Thorpe and Burkey. Significantly, the intervenor offered no evidence to refute the petitioner's claim of the overtime hours worked, and Miller himself testified that he believed Cuthill performed extra work under Harney's supervision.

\* \* \* \* \* \*

"The decision which I am confronted with on this issue is not whether the court would find for Cuthill were his claim relitigated, but whether he misrepresented to this court the fact that he had a claim for overtime compensation, and whether the corporation or its attorney participated in a fraud by knowingly refusing to raise a defense which it or he believed could have prevented a recovery. Under

all the facts and the legal principles just reviewed I cannot find that there were any such misrepresentations made to this court by Cuthill or his counsel; nor, can I find that either the corporation or its attorney participated in a fraud by failing to defend the claim any more than was done."

Counsel for appellant maintain the allegations of fraud were proved but the trial court refused to recognize circumstantial evidence. The burden of proof rested upon the appellant. Assmann v. Fleming, 8 Cir., 1947, 159 F.2d 332; Parker v. Checker Taxi Company, 7 Cir., 1956, 238 F.2d 241, certiorari denied 353 U.S. 922, 77 S.Ct. 681, 1 L. Ed.2d 719. The trial court stated:

"There is no direct evidence of fraud before this court on any of the charges made by the intervenor, and the proof of any inference or charge lies in the credulity of the series of events as asserted by Miller."

Circumstantial evidence is probative evidence. The district court did consider all the evidence and determined that the direct evidence outweighed any inference from any circumstance in evidence upon which there might have been an inference of fraud. It was the duty of the trial court to weigh the evidence and determine the credibility of the witnesses.

From a careful review of all the facts and circumstances before the trial court it must be concluded that there was substantial evidence to support the findings of fact by the district court. The refusal to vacate the judgment and permit a defense to be made was not an abuse of discretion. Assmann v. Fleming, supra.

The cases relied upon in appellant's brief and argument involve facts not applicable here. We have omitted a discussion of each case since it would serve no purpose other than to lengthen this opinion.

Therefore, the order of the district court is

Affirmed.