358 F.2d 26
 John Anthony MARKIEWICZ, a minor, by his father and next
friend, Edward Markiewicz, and Edward Markiewicz,
and Jennie Markiewicz, Plaintiffs-Appellees,
v.
The GREYHOUND CORPORATION, Robert L. Schlagenhauf, National
Lead Company, Defendants, Contract Carriers, Inc.
and Joseph L. McCorkhill, Defendant-Appellants.
 No. 15304.
 United States Court of Appeals Seventh Circuit.
 Jan. 11, 1966, Rehearing Denied March 24, 1966, (en banc).
 
 1
 Aribert L. Young, Indianapolis, Ind., Erle A. Kightlinger, Robert J. Wampler, Armstrong, Gause, Hudson & Kightlinger, Indianapolis, Ind., of counsel, for appellants.
 
 
 2
 Earl C. Townsend, Jr., John F. Townsend, Indianapolis, Ind., Edmund Pawelec, Philadelphia, Pa., Townsend & Townsend, Indianapolis, Ind., of counsel, for John Anthony Markiewicz, a minor by his father and next friend, Edward Markiewicz, and Edward Markiewicz and Jennie Markiewicz.
 
 
 3
 Robert S. Smith, David A. Steckbeck, Charles T. Bate, Indianapolis, Ind., Smith & Steckbeck, Indianapolis, Ind., of counsel, for Greyhound Corporation and Robert L. Schlagenhauf.
 
 
 4
 Before HASTINGS, Chief Circuit Judge, DUFFY, Circuit Judge, and GRUBB, Senior District Judge.
 
 
 5
 GRUBB, Senior District Judge.
 
 
 6
 This diversity of citizenship action to recover damages for personal injuries and related expenses sustained by plaintiffs was tried to the court. Final judgment was entered for the plaintiffs and against defendants, The Greyhound Corporation; Robert L. Schlagenhauf; Contract Carriers, Inc.; and Joseph L. McCorkhill. The appeal is taken by Contract Carriers, Inc. and McCorkhill only.
 
 
 7
 On July 13, 1962, plaintiffs, John Anthony Markiewicz and Jennie Markiewicz, were passengers riding on a Greyhound bus operated by Schlagenhauf in the eastbound lanes of United States Highway 40, a four-lane divided highway, between Stilesville and Belleville, Indiana. About 1:05 A.M., the bus struck the left rear of a Trailmobile trailer being pulled by a 1960 G.M.C. tractor operated by McCorkhill, as a driver for Contract Carriers, Inc.
 
 
 8
 The court found that the G.M.C. tractor had experienced loss of ability to produce normal forward speed for over 100 miles before it reached the point of collision. McCorkhill had made several stops to investigate the cause of the power failure and had contacted the dispatcher of Contract Carriers, Inc. at Anderson, Indiana, advising him that the maximum forward speed of his vehicle was about 30 miles per hour. The dispatcher authorized McCorkhill to operate the unit to its destination. McCorkhill was unable to effect any repair and proceeded eastward on Highway 40 at a speed approximating 20 to 30 miles per hour. Immediately prior to the collision, the rear of the trailer carried 9 red lights which were all properly lighted. At all times in question McCorkhill operated the tractor-trailer in the southernmost lane of the two lanes of Highway 40 designated for eastbound traffic.
 
 
 9
 The cause of the slowdown of McCorkhill's vehicle was a progressive accelerator breakdown which diminished the amount of acceleration progressively. Before this collision, Contract Carriers, Inc. had experienced this type of defect with all of the tractors of this type and provided a spare part in the glove compartment for emergency repair.
 
 
 10
 Schlagenhauf, the operator of the Greyhound bus, had overtaken an eastbound tractor-trailer operated by one Louie L. Stone in the southernmost lane of Highway 40. After passing the Stone vehicle, Schlagenhauf operated his right turn signals, executed lighting courtesy signals to Stone, turned the bus from the northernmost lane to the southernmost lane in front of the Stone vehicle, and reviewed the passed vehicle in his rear view mirror. He observed red lights in front of him and started to return the bus to the northernmost lane to pass the vehicle. The collision occurred in the southernmost lane when the right front parts of the bus engaged the left rear of the trailer. Less than 10 seconds elapsed between the time Schlagenhauf passed the Stone vehicle and the instant of the impact.
 
 
 11
 At the time of and immediately prior to the collision, Schlagenhauf operated the bus at 75 miles per hour. He did not correctly associate the proximity of the red lights he observed in front of him after passing the Stone vehicle and did not correctly compare his speed with the speed of said lights during and immediately after passing the Stone vehicle. Schlagenhauf did not reduce the speed of the bus or apply the brakes prior to the collision. He did not recognize that a collision was imminent until it was too late to avoid it, although he attempted ineffectively to turn the steering wheel of the bus further to the left when he realized the situation.
 
 
 12
 At the time in question, Highway 40 between Stilesville and Belleville, Indiana, and particularly at the point of the collision, was straight and level to rolling. The adjacent property was devoted to farming with a minimum of farm residential dwellings, filling stations, and intersecting county highways. Posted speed limits authorized speed of buses at 65 miles per hour and speed of tractor-trailer units at 55 miles per hour. The eastbound traffic was normal to light. Road and weather conditions were optimal for that hour of traveling on a public highway.
 
 The District Court made this finding:
 
 13
 '11. The low speed of the tractor-trailer unit as determined in these findings of fact impeded the normal and reasonable movement of traffic at the time and place in question and its slow speed was deceptive and misleading to the safety of those operators approaching from the rear of the unit including the operator of the bus and Mr. Stone, the operator of the other tractor-trailer, who was barely able to avoid the colliding vehicles.'
 
 
 14
 The court concluded that Schlagenhauf, and, by application of the Indiana rule of respondeat superior, The Greyhound Corporation were guilty of causal negligence by operating the bus at an excessive speed and by failing to keep a reasonable lookout for other vehicles using the highway. The court further concluded that McCorkhill, and, by application of the doctrine of respondeat superior, Contract Carriers, Inc. were guilty of causal negligence in the operation of the tractor-trailer at such a low speed as to deceive other operators on the highway and to impede the normal and reasonable movement of vehicular traffic, in violation of Burns Indiana Statutes, 1962 Cumulative Supplement, Volume 8, Part 2, 47-2006; in failing to perform the common law duty of ordinary care by operating the tractor with knowledge that it did not have sufficient power to two the trailer at sufficient speed to avoid impeding the normal flow of traffic, and in towing the trailer under these circumstances without giving warning to vehicles approaching from the rear as to its low speed and presence on the road by flares, extra lamps, or other brightly illuminated devices.
 
 
 15
 Section 47-2006 of Burns Indiana Statutes, 1952 Cumulative Supplement, Volume 8, Part 2, provides as follows:
 
 
 16
 'No person shall drive a motor vehicle at such a low speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with the law.'
 
 
 17
 What constitutes illegal 'low speed' under the statute involves a question of fact for the trier of the cause to be determined under the circumstances of the case. Pohlman v. Perry, 122 Ind.App. 222, 103 N.E.2d 911, 915 (1952).
 
 
 18
 Significant factors to be considered in the instant case are the time and opportunity available to Schlagenhauf for observing and evaluating the relative position and the speed of the Contractor Carriers, Inc. vehicle. The evidence shows that Schlagenhauf approached from the rear. His view of this vehicle had been obstructed by the intervening tractor-trailer operated by Stone. On clearing the Stone tractor-trailer, Schlagenhauf reached a position from which he could observe the lights mounted on the rear of the trailer towed by the Contract Carriers, Inc. tractor. At this time, his attention was also directed to the vehicle he had just passed. Schlagenhauf's belief that the lights ahead were no cause of concern to him and his action in returning the bus to the southernmost lane clearly indicate that he made an erroneous assessment of the situation.
 
 
 19
 Although the mistake in judgment was that of Schlagenhauf, it does not follow that the collision, as a matter of law, must necessarily be attributed solely to him. His conduct in passing and giving attention to the Stone vehicle may be characterized as normal incidents of highway travel. Further, the normal flow of traffic does not exclude a situation in which the operator of one vehicle may have but a few seconds in which to arrive at an evaluation as to the speed and relative location of another vehicle on the highway. Under such circumstances, a vehicle proceeding at an unusually slow speed, that is, unusual in light of the conditions of the road, the hour of travel, the amount of traffic on the highway, and the type of vehicle involved, may, by the very unexpectedness of its speed, mislead the operator of another vehicle who lacks opportunity for a more prolonged observation.
 
 
 20
 Schlagenhauf's negligence in the operation of the bus at an excessive speed and in failing to maintain a proper lookout unquestionably contributed to the impairment of his judgment. In light of his limited opportunity for observation of the Contract Carriers, Inc. vehicle, his error may reasonably be found to have been induced also by the fact that the tractor-trailer was being operated at an unusually low speed-- possibly as low as 20 miles per hour-- of which its lights and general appearance on the highway gave no indication.
 
 
 21
 We are not here concerned with a comparison of the negligence of the respective tortfeasors, or with the problem of intervening or superseding causes. The issue before the court is whether the record supports a finding that the speed at which the Contract Carriers, Inc. vehicle was being operated constituted causal negligence as to the plaintiffs in that it misled and deceived the driver of the bus, and impeded the flow of traffic on the highway. This finding will not be disturbed on appeal if it may be sustained upon a rational view of all of the evidence including all reasonable inferences of which the testimony is susceptible. Smoczynski v. United States, 352 F.2d 44, 47 (7th Cir. 1965).
 
 
 22
 Consideration of the record discloses that the operation of the Contract Carriers, Inc. vehicle in the manner and under the circumstances shown here may be found to have contributed to Schlagenhauf's error in judgment as to the relative position and speed of the vehicle, and that the operation of said vehicle thereby constituted a concurring, substantial factor, together with the negligence of the driver of the bus, in bringing about the harm to plaintiffs. The standards of causal negligence under Indiana law are met thereby. Huey v. Milligan, 242 Ind. 93, 175 N.E.2d 698, 703 (1961). The manner of operation of said vehicle as determined by the district court further may be deemed to have impeded the normal and reasonable flow of traffic in violation of 47-2006, Burns Indiana Statutes.
 
 
 23
 The fact that an unobstructed lane of travel, that is, the northernmost of the eastbound lanes, may have been available to Schlagenhauf, does not as a matter of law obviate causal negligence which contributed to the bus driver's determination not to follow the unobstructed lane. See Seaton v. Spence, 215 Cal.App.2d 761, 30 Cal.Rptr. 510 (1963). Appellants' further theory that the collision would have occurred regardless of the speed of the tractor-trailer because of Schlagenhauf's conduct presents an area of speculation which has no support in the record and is not necessarily to be inferred from the evidence in the case.
 
 
 24
 The additional specifications of causal negligence found by the district court rest on the validity of the finding of causal negligence in the operation of the tractor-trailer at such deceptively low speed as to impede the flow of traffic. It is undisputed that the operator of the Contract Carriers, Inc. vehicle proceeded upon the highway with knowledge of the impairment of its capacity for attaining reasonable speed and without providing said vehicle with additional lights or warning devices to alert others to this condition. This conduct may be deemed to constitute negligence. It is unnecessary to decide the question whether or not this negligence must also be deemed to constitute additional independent instances of causal negligence since the affirmance of the determination as to the violation of the Indiana low apeed statute suffices to sustain the judgment.
 
 
 25
 The real issue on this appeal concerns the question of appellants' causal negligence. Whether or not, under the circumstances revealed by the record, the operation of the Contract Carriers, Inc. tractor-trailer was at such a low speed as to deceive others upon the highway and to constitute an impediment to traffic must be determined by the trier of facts. It is the function of the trier of facts to weigh the evidence presented by oral testimony in the case. Koehler v. Ellison, 226 F.2d 682, 686 (7th Cir. 1955). All reasonable inferences of which the evidence of record is susceptible drawn by the trier of facts must be accepted by the reviewing court regardless of whether its members might have reached opposing inferences. Alster v. Alster and Associates, Inc., 319 F.2d 54, 55 (7th Cir. 1963). The findings of the district court, serving as the trier of facts in this case, as to causal negligence by a deceptively low speed and by impeding traffic has sufficient support in the record. The judgment is affirmed.
 
 
 26
 DUFFY, Circuit Judge (dissenting).
 
 
 27
 I respectfully dissent. At the time of the collision, the tractor-trailer was traveling entirely within the right-hand lane of the two east-bound traffic lanes. Under Indiana law, this is where the tractor-trailer should have been. There were nine red lights lit on the rear of the trailer visible for a distance of some 500 feet or more. These lights were in compliance with Indiana statutes and interstate commerce regulations. The tractor-trailer was traveling on a divided four-lane highway which, at the point of the accident, was straight and of level to rolling terrain. It had wide shoulders. The weather was clear and dry with good visibility. The Court found the tractor-trailer had been traveling at a speed of 20 to 30 miles per hour, although the probative evidence shows the speed to have been 25 to 30 miles per hour.[1]
 
 
 28
 I am convinced that if the tractor-trailer had been traveling at a speed of 30 to 40 miles per hour, or even at a higher speed, the collision still would have occurred. It is of no importance whether a faulty accelerator part was the reason for the 20 to 30 mile speed, or whether the tractor-trailer was slowing down to turn into the next filling station. In this case, the cause of the tractor-trailer's speed cannot be a proximate cause of the collision.
 
 
 29
 The bus driver, Schlagenhauf, had the entire inner east-bound lane in which to pass the tractor-trailer. This lane was clear, unobstructed, and about fourteen feet in width.
 
 
 30
 The majority opinion affirms the District Court in holding the driver of the tractor-trailer violated the Indiana statute which provides-- 'No person shall drive a motor vehicle at such a low speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with the law.' Burns' Ind. Statutes Annotated (1952 Replacement) (Supp) 47-2006.
 
 
 31
 It is apparent that a slow moving vehicle can impede the normal and reasonable movement of traffic on a 2-lane highway, but it is beyond my comprehension how this can be done by a vehicle traveling in the extreme right-hand lane of a four-lane highway where the second east-bound lane is clear and free from all obstruction. These are the circumstances present in this case.
 
 
 32
 The District Court also suggested the tractor-trailer should have had warning lights in addition to the nine which were lit. However, the Indiana statutes make it clear that vehicles proceeding at less than the normal speed of traffic are specifically authorized to continue operating upon the highways without additional warning lights as long as they operate as close as possible to the righthand side of the highway, unless the vehicle's speed is less than 20 miles per hour. That is not the situation in the case at bar.
 
 
 33
 There was no minimum speed limit in effect at the time and place in question. The highway was not an expressway, freeway, or any other type of limited access highway.
 
 
 34
 The Collision occurred because of the bus driver's lack of look-out. The bus was traveling at a speed of about 75 miles an hour. In my judgment, the failure of Schlagenhauf, the driver of the bus, to keep a proper look-out was the sole, active, direct, independent and effective cause of the plaintiffs' injuries. Hayes Freight Lines v. Wilson, 226 Ind. 1, 77 N.E.2d 580; Huey v. Milligan, 242 Ind. 93, 175 N.E.2d 698.
 
 
 
 [1]
 The evidence in this case consists mainly of depositions and other documentary evidence